FANNY J. BRYM, APPELLEE, v. BUTLER COUNTY, APPELLANT.

FILED MAY 20, 1910.    No. 15,999.

1. **Highways:** PRESCRIPTION. By continuous, adverse user under claim of right for ten years the public may acquire a highway along a section line through cultivated lands.

2. ———: ———: ESTOPPEL. The power to establish, change, maintain or abandon public highways having been committed by the legislature to the county board, petitioners for the opening of a section-line road, the county clerk, viewers and appraisers, when acting independently of the county board in taking preliminary steps authorized by statute, cannot estop the county from asserting that the road had already been acquired by adverse user.

APPEAL from the district court for Butler county: GEORGE F. CORCORAN, JUDGE. *Reversed.*

*A. V. Thomas,* for appellant.

*R. C. Roper,* contra.

ROSE, J.

This is a controversy over a claim against Butler county for a strip of land used for a highway. The county board rejected the claim. Plaintiff appealed to the district court, and there recovered a judgment for $50. The matter is presented here on an appeal by defendant.

Plaintiff owned the north half of the northeast quarter of section 16, township 13, range 3, in Butler county. A strip 20 feet wide along the east side of her tract, as thus described, is the land for which the trial court allowed

damages. The county attorney insists that by continuous, adverse user under claim of right for more than the statutory period of ten years the public acquired a highway running north and south between sections 15 and 16, and that the disputed strip is part of the highway. Is this position well taken? A witness testified to the effect that he had been acquainted with the road 14 or 15 years, having traveled it with a steam thresher nearly 15 years ago, and that he had seen the road since, and that it had been used just like any other road for traveling. One of plaintiff's witnesses, who knew the road and first traveled it in 1889, said that part of the land on either side was cultivated at that time, and that "any one having cause to go over the road could." A witness called by defendant stated he had lived for about 13 years in township 13, in which the road is located, and that he had been acquainted with it probably 12 years; that he was a road overseer in 1900 and 1901, and as such worked the road, making a culvert, and being assisted by a man who was working out a poll tax. The road overseer who was elected in 1894 testified that he put in a tile culvert in 1895, and that the road was the main-traveled one to Seward. The work of the overseers seems to have been confined principally to the draws where the culverts were needed, but there is proof that elsewhere the road was good. Proof of work on that part of the road in good condition was unnecessary. *Brandt v. Olson,* 79 Neb. 612. A resident of the township said he had been acquainted with the highway since 1884, and since that time it had been traveled generally by the public. A man from David City, who visited the *locus in quo* in 1899, testified that he found a good road, with wagon tracks which "looked like they had been cut down in the sod for 15 years." A witness who had been acquainted with the road since 1891 said his recollection was that the land on both sides was then in cultivation. During the period covered by the proofs, most of the land on both sides of the section line had at one time or another been fenced,

but the public travel was never interrupted, a roadway having been left open. Some unfenced land had been cultivated clear up to the beaten track, but teams in passing each other were driven through the grain when necessary. It is clear that the highway was continuously used more than ten years before this proceeding was commenced. The evidence disclosed no material divergence from the line of travel, within the meaning of the rule that slight deviations to avoid mud, pools or encroachments will not necessarily prevent the public from acquiring prescriptive rights, where the roadway has been used without interruption or substantial change for more than ten years. *Kendall-Smith Co. v. Lancaster County,* 84 Neb. 654. There is no evidence to show that any landowner on either side of the section line, or any other person, ever interfered with public travel at any time. Plaintiff traveled over the highway herself and looked at the land before she bought it. Defendant's position on this issue is fairly established, within the meaning of the rule that by continuous, adverse user under claim of right for the statutory period of ten years the public may acquire a highway through cultivated lands. *Engle v. Hunt,* 50 Neb. 358; *Nelson v. Sneed,* 76 Neb. 201. There is some proof tending to show that the road was 40 feet wide 14 or 15 years ago. The question of width, however, is settled by the following stipulation made in open court: "It is hereby stipulated and agreed that the width of the road between sections 15 and 16 herein is to be 40 feet in any event concerning the result of this suit."

Plaintiff contends, however, that the county board participated in proceedings to condemn a portion of her land for highway purposes, and thereby estopped the county from claiming it by prescription or adverse user. Twenty residents of the county commenced proceedings October 27, 1906, by filing with the county clerk a petition for the opening of the road. A viewer, subsequently appointed, reported December 12, 1906, as follows: "I will report in favor of the opening of said road. It will re-

quire one culvert four by six feet to make said road passable." The county clerk by newspaper publication notified those interested to file their objections to the opening of the road and their claims for damages in his office on or before March 16, 1907. Appraisers appointed by the county clerk reported April 16, 1907: "We have examined said road, and find there are no damages, because of the fact that said road has become a lawful road by virtue of having been traveled for more than ten years. We would also recommend that said road be declared open and worked." At a meeting of the county board May 14, 1907, plaintiff's claim was rejected, the reports of the viewer and appraisers approved, the road declared open, and the clerk instructed to make the proper entry on the county records. Through these proceedings did the public lose the valuable rights previously acquired by prescription or adverse user? Is the county estopped to assert the rights thus acquired? These questions require an examination of the statutes and the nature of the proceedings described. The power to establish, repair, change, maintain or abandon public roads has been committed by the legislature to the county boards. Comp. St. 1909, ch. 78. Petitioners, viewers, appraisers or county clerks, having no jurisdiction over those subjects, cannot by estoppel deprive the public of legally acquired highways. If the county is estopped in the present case, it must necessarily be by some act of the county board. That tribunal did not initiate this proceeding. The road is on a section line, and could have been opened by the county board without a petition, if not already opened. Comp. St. 1909, ch. 78, sec. 46; *Berry v. Deloughrey,* 47 Neb. 354. No such action was taken. On the contrary, the record shows that in 1899 the county board made an order reciting that it considered the road already established. In appointing appraisers and in notifying those interested to file their objections and claims for damages, the county clerk performed ministerial duties imposed by statute. Comp. St. 1905, ch. 78, secs. 4-24. The nature

of those acts depended on the law, which plaintiff was bound to know. The county clerk, in giving plaintiff an opportunity to be heard before the county board, did not prevent the county from subsequently asserting that the road had already been established. Neither the viewer nor the appraisers had any authority to bind the county by any preliminary report or finding, since the power to establish, maintain or abandon roads, and to allow or to reject claims against the county, had been granted to the county board. Its first order in this proceeding, according to the record, was made May 14, 1907, when plaintiff's claim was rejected, the reports of the viewer and appraisers approved, the road declared open, and the county clerk instructed to make the proper entry on the county records. Neither the viewer nor the appraisers reported that the road had not been established, and the approval of their reports was not an assertion of that fact. There was no county record of the highway, because it had been acquired by the public independently of any action of the county board. The approval of the reports amounted to no more than the making of a formal order for the opening of a road already in existence. Plaintiff had the same means as the county board of obtaining knowledge of the prescriptive rights of the public. She was required to take notice of the law under which the county clerk published the notice and appointed the appraisers. She was not misled or deprived of any property or right by the conduct or decision of the county board. The elements of estoppel are entirely wanting. On the record made in the district court, the findings should have been in favor of the county.

The judgment of the district court is therefore reversed and the cause remanded for further proceedings.

REVERSED.

FAWCETT, J., dissenting.

The majority opinion sustains the county's claim to the road in question by adverse user for more than ten years.

Plaintiff does not admit that the road was ever established by user, but alleges that if such were the case, it could only be to the extent of the way used. It is clear that the road was never used the full legal width, but on the contrary, for many years, fences were maintained and crops raised on the land now sought to be appropriated. That being true, plaintiff is clearly entitled to compensation for the land not previously used by the public. Where a road is established in the regular way, the law fixes it at a certain width. Such action on the part of the county authorities gives a kind of color of right or title, and the rule of *pedis possessio* does not apply; but when there has not been any legal establishment of a road, the rule does apply. The district court took that view of the case and allowed plaintiff for a strip of land twenty feet wide which had not been used by the public. In this I think the district court was right. All must concede that even the lawful establishment of a section line road does not cut off claims for damages for the land taken; and where a road is never legally opened, nor the full width fixed by law occupied for the full period of ten years, the right to damages for the land not used remains unimpaired. Plaintiff received damages for twenty feet of land never used except by herself in connection with and in the same manner that she had used her other lands. Her right to compensation therefor had never been surrendered or lost. I think the judgment of the district court should be affirmed.

REESE, C. J., concurs.