RALPH OLSON, EUGENE OLSON, AND LEO SINSEL, APPELLANTS, V. DEAN BONHAM AND CONNIE BONHAM, HUSBAND AND WIFE; NEBRASKA TURKEY RANCH, INC., A CORPORATION, ET AL., APPELLEES, KEARNEY COUNTY, NEBRASKA, ET AL., INTERVENORS-APPELLANTS.

324 N.W.2d 260

Filed September 3, 1982. No. 44360.

Jacobsen, Orr & Nelson, for appellants Olson et al.

Brock & Seiler, for appellee Nebraska Turkey Ranch.

Jerry C. Stirtz, Kearney County Attorney, and Thomas G. Lieske, for intervenors-appellants Kearney County et al.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

CLINTON, J.

Plaintiffs, Ralph Olson, Eugene Olson, and Leo Sinsel, commenced this action in equity against the defendant Nebraska Turkey Ranch, Inc., and others, to establish the rights of the parties in using the "disputed road" referred to in the petition.

The petition prayed for injunctive relief against the defendant's barricading the road and a declaration that a public road existed. The petition alleged that "the disputed road lies thirty feet along each side of a Kearney County section line and is under the above passed resolution, a section line road which had been maintained and used by the public as a road from its creation over ninety years ago until May of 1977." The reference to a resolution, enacted by the county board on June 19, 1882, is as follows: " 'On motion, all section lines in Kearney County are declared public highways and road supervisors are ordered to open and work on the same as provided by Section 46, Page 44, Compiled Stat-

utes, 1881.' '' The petition further alleged facts showing the road had been established by adverse use. Paragraph XVI of the petition stated as follows: ''That the disputed road will not be maintained by the County as a section road unless this Court declares that said disputed road is a public road and maintainable by Kearney County as a public road.'' Kearney County intervened in the action, asking for a declaration that the ''disputed road'' ''is a public road; that the same is not less that [sic] forty, nor more than sixty-six feet in width; permanently enjoining the Defendant, Nebraska Turkey Ranch, Inc., from barricading or blocking said road in any manner whatsoever; declaring any barricade now exssisting [sic] to be a public nuisance and ordering the same to be removed and abated . . . .''

After trial the court found ''that the Plaintiffs have failed to prove the relief stipulated to i.e. Adverse Possession.

''As between the Principal Parties to this litigation the five elements required to prove adverse possession have not been shown by the Plaintiffs, and the Cross-Petition of . . . Kearney County is without merit.''

The defendant ranch is the record title owner of the northwest quarter and the west half of the northeast quarter of Section 26, Township 8, Range 14, and of the south 27½ acres of the southwest quarter of Section 23, Township 8, Range 14; thus it is record title owner of property on each side of the section line along which the ''disputed road'' allegedly runs.

The plaintiffs introduced evidence showing that from 1913 to at least 1938 a trail or track road existed along the section line between Sections 26 and 23. Other evidence indicated the trail road was used until 1977. The witnesses' testimony indicated that the road's visible marks consisted of ''grooves'' from vehicle wheel tracks. While the tracks' exact path was not shown, it was described as ''nearly'' lined

up with an extension of a now-established oil mat and gravel section line road to the west. Plaintiffs' testimony indicated that the general public used the trail and that cattle were sometimes driven along it.

No evidence showed that the county ever maintained the "disputed road." Plaintiffs did not contend that the resolution of the county board described in the petition was ever implemented by the appointment of appraisers and determination of damages as required by the provisions of Comp. Stat. Ch. 78, §§ 46 and 21 et seq. (1881), or successor statutes, to wit, Comp. Stat. §§ 39-145 and 39-119 (1929), and Neb. Rev. Stat. § 39-122 (Reissue 1952), or the present statute, Neb. Rev. Stat. § 39-1410 (Reissue 1978).

In 1977 the plaintiff Ralph Olson, after having been absent from the neighborhood since 1938, acquired land nearby and for convenience desired to use the "disputed road." He and Sinsel brought discs and earthmovers to the area and began to open the road. At that time the trail was overgrown with vegetation and could not be seen. Olson took this action on his own authority and without the sanction of the county commissioners.

Defendant presented the following testimony. A former owner of the land, now owned and occupied by the defendant, testified that he acquired the property in 1942 and sold it in 1956. At the time of trial he lived within ¼ mile of the property. From 1942 he farmed the land described as the "disputed road." He knew of no trail along the section line. He never fenced off the section line because he said there was no need to. When he acquired the property, a shelterbelt existed along the south side of the section line and that shelterbelt still exists.

The defendant acquired the land in about 1960, using it for raising turkeys. A former part owner and officer of the corporation testified that from 1960 to 1972 he saw no public travel along the section line.

The land north of the shelterbelt was then all under cultivation. The turkey pens cross the section line to the north. No trail existed at that time.

The present manager of the ranch, who joined the corporation in 1972, testified that he knew nothing about the situation before 1972. As to the period within his knowledge, he testified that just north of the shelterbelt is a trail which is the driveway to the ranch. The turkey pens run through the shelterbelt and across the section line. The shelterbelt shades the birds. When the operators check the pens for dead birds they throw the turkeys across the fence and onto the driveway trail and then pick them up with a truck. During the time he has managed the ranch, from 1972 to the time of trial, the only people he has seen using the road are occasional hunters. In the spring of 1977 he observed machinery in the fields and discovered that the plaintiff Eugene Olson and others were putting a road in. This was the first knowledge he had of a claim of an existing or established road. At that time he had the road barricaded.

The district judge made a personal inspection of the premises here involved.

The evidence, if believed by the district judge, was clearly sufficient for a finding that a public road existed at least to the extent of the trail. However, the plaintiffs and intervenors seek more in this case. They ask for a determination that a public road has been established by adverse use to the full width of a county road established by statute.

The governing principles are these. By continuous adverse use under claim of right for 10 years the public may acquire a highway along a section line. *Brym v. Butler County,* 86 Neb. 841, 126 N.W. 521 (1910). The extent and nature of an easement is determined from the use made of the property during the prescriptive period, and the width of the public highway acquired by prescription must be deter-

mined as a question of fact by the character and extent of the use or the amount dedicated to public use, but it may be more or less than the width of a public highway as prescribed by statute. "Extent," within the term extent of easement claimed in land as right-of-way for a road, means the width. If the public has acquired the right to a highway by prescription, it is not limited in width to the actual beaten path, but the right extends to such width as is reasonably necessary for public travel. *State ex rel. Game, Forestation & Parks Commission v. Hull,* 168 Neb. 805, 97 N.W.2d 535 (1959).

The plaintiffs and intervenors seem to urge that *Plischke v. Jameson,* 180 Neb. 803, 146 N.W.2d 223 (1966), and *State ex rel. Game, Forestation & Parks Commission v. Hull, supra,* stand for the proposition that when a prescriptive right for highway use has been acquired along a section line, the right extends to the full width of a statutorily established road. An examination of these two cases indicates they do not stand for that proposition. There are three opinions in *Plischke v. Jameson:* 180 Neb. 803, 146 N.W.2d 223 (1966); 181 Neb. 887, 152 N.W.2d 119 (1967); and 182 Neb. 153, 153 N.W.2d 359 (1967). In that case there were two roads overlapping, one a statutorily established road of 66 feet, the other a prescriptive road claimed to be 18 feet in width which at points went beyond the 66-foot established road right-of-way. The court held that the establishment of a statutory road did not disturb the prescriptive right as to the portion that extended beyond the statutory road. The court held that the evidence justified a prescriptive road 16 feet in width. In *State ex rel. Game, Forestation & Parks Commission v. Hull, supra,* the court held that the extent of the right is fixed and determined by the use in which it originated.

The plaintiffs argue for a width of 60 feet. Apparently in this connection they rely upon the provisions

of Neb. Rev. Stat. § 39-104 (Reissue 1952) and the case of *Brym v. Butler County, supra.* The statutory limit during the prescriptive period has varied from 66 to 40 feet. In *Brym v. Butler County, supra,* the parties stipulated that if the court found that a prescriptive road existed, it should be 40 feet in width.

The resolution enacted by the board of commissioners in 1882 does not help the plaintiffs and intervenors. A county could not, even under the original statutes, open a section line road without giving notice to the landowners, hearing the landowners' claim for damages, or appointing appraisers and making provisions for payment of the landowners' damages, and if it attempts to do so it is a trespasser. *Scott's Bluff County v. Tri-State Land Co.,* 93 Neb. 805, 142 N.W. 296 (1913); *Henry v. Ward,* 49 Neb. 392, 68 N.W. 518 (1896); *Chicago, B. & Q. R. Co. v. Douglas County,* 1 Neb. (Unoff.) 247, 95 N.W. 339 (1901).

The evidence does not establish that a prescriptive right was acquired to the extent of either 40 feet or 66 feet, and, accordingly, the District Court was justified in refusing the requested relief.

AFFIRMED.